IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | 8:05CR93 |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | MEMORANDUM AND ORDER |
| RUDOLPH GEORGE STANKO, ) | |
| ) | |
| Defendant. ) | |
| ) | |

Before the court is defendant Rudy Stanko's ("Stanko") motion to vacate pursuant to 28 U.S.C. § 2255. Filing No. 335. Stanko has a number of related motions which, with the exception of Filing Nos. 383 and 384, are tied to his request to vacate. These related filings include the following motions: motion to expedite, Filing No. 341; motion for prompt examination, Filing No. 346; motion to arrest judgment, Filing No. 349; motion petition/demand for information, Filing No. 352; motion for release, Filing No. 357; motion to reduce sentence, Filing No. 366; motion for hearing, Filing No. 379; motion for leave to file a First Amendment petition and criminal complaint or a third-party counterclaim, Filing No. 383; motion for release date, Filing No. 384; and motion for intervention and a hearing date, Filing No. 385.

The court will first address all the motions except the motion to vacate, Filing No. 335. The court considers Filing Nos. 341, 346, 349, 379 and 385 related to Stanko's 2255 motion and finds these motions are moot in light of the decision on the merits in this habeas case. The court has reviewed the motions for release and to reduce sentence, Filing Nos. 357 and 366, and concludes grounds do not exist to grant either motion. The court will dismiss the motion for leave to file a First Amendment petition and criminal

complaint or a third-party counterclaim, Filing No. 383. The court has reviewed this filing and finds it is not related to the § 2255 case but is a separate cause of action related to civil rights claims against the jail officials in Colorado. The court does not have jurisdiction over that issue in the case before it. Further, Stanko cannot use a § 2255 case or his previous criminal case to avoid paying the statutory filing fee for a new case. In any case, the defendant cannot file such an action in Nebraska federal court as jurisdiction does not exist here. With regard to motion to inspect and produce, Filing No. 352, the court notes that the Clerk of Court for the District of Nebraska provided defendant with a copy of the Modified Plan for Random Jury Selection on November 1, 2007. On July 10, 2008, the Clerk of Court provided defendant with the United States District Court for the District of Nebraska Modified Plans for Random Jury Selection dated April 25, 2008; May 5, 2006; May 5, 2003; July 31, 2001; and September 10, 1997. The court also sent a letter to Mr. Stanko on November 20, 2007, indicating that the amended June 2003 plan had been provided to him. Further, the Clerk of Court provided all three of Stanko's counsel with a copy of the "Jury Pool Trial Report" which includes the list of initial jurors randomly selected to appear for jury selection. This report is given to counsel several business days in advance of trial. This report includes name of juror, address, juror number, employer, occupation and marital status. The court also provided counsel with access to grand jury records. Filing No. 392.[1] Thus, this motion is denied as moot. With regard to Filing No. 384, the defendant asks this court to notify the Bureau of Prisons regarding his release

---

[1] The Clerk of Court notified the court that Mr. Stanko's attorney did in fact review the grand jury records pursuant to the order entered on April 8, 2009, Filing No. 392. Defendant did not file a motion regarding the grand jury selection process.

2

date as it relates to the recent dismissal by the government of the Social Security fraud case filed against defendant. However, the court does not intervene with determinations of the Bureau of Prison as to release date calculations, and in any event, it is clear from a review of Filing No. 384 that the officials at the Bureau of Prisons intend to consider this dismissal in their calculations.

The court will now proceed with the merits of the § 2255 petition, Filing No. 335.

### BACKGROUND

Two cases are involved in defendant's § 2255 petition, one directly and the other indirectly. The government initially filed this criminal case on March 10, 2005, and alleged in Counts I and II that Stanko, a previously convicted felon, possessed eight firearms and ammunition, and alleged in Count III that Stanko unlawfully transported firearms. After a four-day trial, the jury convicted Stanko of the felon in possession of a firearm and ammunition charges. This court sentenced Stanko to 72 months' imprisonment plus three years of supervised release. Stanko filed a notice of appeal and the Eighth Circuit Court of Appeals affirmed his conviction on June 20, 2007. *United States v. Stanko*, 491 F.3d 408 (8th Cir. 2007). Thereafter, defendant filed this § 2255 petition on January 31, 2008. The court ordered the government to respond, and it has done so.

With regard to Stanko's second (fraud) case, on February 24, 2006, the government filed an indictment against defendant alleging that on or about June 17, 2004, Stanko knowingly represented a false Social Security number to a bank in violation of 42 U.S.C. § 408(a)(7)(B). *United States v. Stanko*, 06CR50. The jury rendered a guilty verdict on October 25, 2006. Filing No. 226. On February 5, 2007, this court sentenced defendant to twelve months and one day and to a supervised release term of three years. Thereafter,

defendant filed a notice of appeal in the fraud case, Filing No. 311, and the Eighth Circuit Court of Appeals reversed. Filing No. 341, *United States v. Stanko*, 528 F.3d 581 (8th Cir. 2008). The Eighth Circuit determined that this court failed to consider the relevant factors under Fed. R. Crim. P. 18 concerning Stanko's motions for a change of venue to North Platte.[2] The Eighth Circuit also directed this court to provide Stanko with access to the grand and petit jury selection records pursuant to 28 U.S.C. § 1867(f) (disclosure of jury records). Shortly thereafter, the government dismissed the Social Security fraud case.

## DISCUSSION

Stanko then filed this habeas corpus case. In his motion for habeas relief, Stanko contends that he received ineffective assistance of counsel from Roger Roots, his attorney. Stanko argues that Mr. Roots failed to assert (1) that the government issued a defective indictment; (2) that the court failed to select the grand and petit juries in this case from the area where Stanko resided and where the crime took place, western Nebraska; (3) that the court imposed an illegal sentence in this case; (4) that the court erred in assessing jury costs against Stanko; (5) that the court failed to instruct on an affirmative defense; (6) that the court erred in refusing to permit Stanko to use a non-licensed scholar in his defense; and (7) that his conviction is a bill of attainder.

The government first argues that Stanko failed to assert these issues on direct appeal. "The failure to raise an issue on direct appeal acts to bar a petitioner from raising that issue for the first time in a section 2255 motion[.]" *Matthews v. United States*, 114

---

[2]Defendant filed motions in both the felon in possession and fraud cases too numerous to count. One of his many requests in both cases included a request for petit and grand jury information and a change of venue to North Platte.

4

F.3d 112, 113 (8th Cir. 1997). "This procedural default may be excused only if the petitioner 'can show both (1) a cause that excuses the default, and (2) actual prejudice from the errors that are asserted.'" *Id*. (internal citation omitted). Ineffective assistance of counsel is one method of showing cause sufficient to excuse a procedural default. *McCleskey v. Zant*, 499 U.S. 467, 493-94 (1991); *United States v. Apfel*, 97 F.3d 1074, 1076 (8th Cir. 1996). Defendant argues he received ineffective assistance to the extent it excuses his procedural default.[3]

Ineffective assistance of counsel claims are analyzed under the framework described in *Strickland v. Washington,* 466 U.S. 668 (1984). In other words, defendant has the burden of proving: 1) deficient performance on behalf of counsel, demonstrated by his attorney's performance "below the minimum standards of professional competence" and 2) prejudice, by showing a "reasonable probability that the result of the proceedings would have been different" had his attorney performed "competently." *Alaniz v. United States,* 351 F.3d 365, 367 (8th Cir. 2003) (citing *Strickland,* 466 U.S. at 690). Moreover, Stanko must overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland,* 466 U.S. at 689. "Prejudice requires a reasonable probability that the proceeding would have ended in a different result without counsel's errors." *Auman v. United States*, 67 F.3d 157, 162 (8th Cir. 1995). When determining if prejudice exists, the court "must consider the totality of the evidence before the judge or jury." *Strickland*, 466 U.S. at 695. "If the defendant cannot prove prejudice, we need not address whether counsel's performance was deficient." *Williams v. United*

---

[3] Roger Roots has admitted that he was ineffective and requests a hearing to admit the same with regard to his failure to raise the venue and grand jury issues on appeal in this case. Filing No. 381.

5

*States*, 452 F.3d 1009, 1013 (8th Cir. 2006) (*quoting* *DeRoo v. United States*, 223 F.3d 919, 925 (8th Cir.2000)).

The government would have this court determine that defendant's trial and appellate attorney, Roger Roots, should have raised these issues on appeal. Because Mr. Roots did not do so, argues the government, defendant waived those arguments and cannot raise them on appeal. The court disagrees, particularly with respect to those issues where Mr. Roots claims he in fact provided inadequate counsel, and will review the claims under the ineffective assistance standard.

### 1.  Defective indictment

Defendant  first argues that his counsel is ineffective for failing to argue on direct appeal that the indictment is defective. The Eighth Circuit has already addressed this issue. The Eighth Circuit stated: "[a]n indictment 'is legally sufficient on its face if it contains all of the elements of the offense charged, fairly informs the defendant of the charges against which he must defend, and alleges sufficient information to allow a defendant to plead to a conviction or acquittal as a bar to subsequent prosecution.'" *Stanko*, 491 F.3d at 411-12 (internal citations and quotations omitted). The Circuit further stated that the government must prove "three essential elements for a § 922(g)(1) conviction: (1) the defendant previously was convicted of a crime punishable by a term of imprisonment exceeding one year; (2) he knowingly possessed a firearm; and (3) the firearm traveled in or affected interstate commerce." *Id*. at 412. The Circuit found the indictment "contained each element of the offense, fairly informed Stanko of the charges, and alleged sufficient information to allow Stanko to plead a conviction or acquittal as a bar to a subsequent prosecution." *Id*. Issues which a defendant raised and the appellate court decided on direct appeal cannot be relitigated under a § 2255 motion. *Bear Stops v.*

*United States*, 339 F.3d 777, 780 (8th Cir. 2003); *United States v. Wiley*, 245 F.3d 750, 752 (8th Cir. 2001). Accordingly, because the Eighth Circuit decided this issue on appeal, the court finds this claim lacks merit.

### *2. Failure of the court to instruct the jury on a justified defense*

Stanko claims ineffective assistance of counsel alleging his attorney failed to argue on appeal that the district court should have given an instruction for the affirmative defense regarding gun use for hunting, recreation, personal protection, or other lawful activity. Filing No. 335, p. 70. Defendant raised this matter during the trial. He asked for a proposed instruction, No. 12, on this issue. Filing No. 261, p. 5. Stanko argued he had a right to possess firearms. The court denied the request for such an instruction. The superseding indictment charged Stanko with possession of the following weapons:

1. Smith & Wesson, .22 caliber pistol;

2. Butler slot pistol .22 caliber Derringer;

3. Marlin Glenfield Model 25, .22 caliber bolt action rifle;

4. Savage Model 79, .20 gauge pump shotgun;

5. Remington Model 740, 30-60 caliber rifle;

6. Remington Model 7400, .270 caliber rifle;

7. Savage Model 1100, 7mm caliber rifle;

8. Winchester Model 37, .410 gauge shotgun.

Count II charges defendant with possession of ammunition by a felon. Stanko presents no evidence now that these guns met any exemption under the felon in possession statute. Accordingly, the court finds this claim meritless. Even if counsel for defendant had raised this issue in the form of an affirmative defense, the court finds there is no evidence to support such a claim with regard to the guns or the ammunition.

7

Convicted felons may be deprived of their right to keep and bear arms. *Lewis v. United States*, 445 U.S. 55, 65 n.8 (1980). Accordingly, the court denies the claim of ineffective assistance of counsel as to this issue. For the same reasons, the court finds that defendant's related argument, that defense counsel failed to raise on direct appeal that defendant has a constitutional right to possess firearms, is without merit.

### *3. Bill of attainder*

Stanko also argues that defense counsel erred in not arguing that his conviction is the result of a bill of attainder. The court has reviewed this argument and finds it totally devoid of merit. Congress has power and authority to target citizens convicted of dangerous and violent crimes and to impose the punishment of losing their right to bear arms. *See United States v. Davis*, 27 Fed. Appx. 592, 600 (6th Cir. 2001).

### *4. Right to non-licensed scholar*

Stanko argues that his counsel failed to argue on direct appeal that Stanko had the right to have assistance of a non-licensed scholar, Michael Allen Chalupa, as his counsel representative. This court addressed that issue with Stanko on several occasions. Stanko asked for the assistance of Michael Chalupa in this case. The court informed Stanko that he did not have a "constitutional right to have Mr. Chalupa assist in [his] representation." Filing No. 80 at 1. *See United States v. Young*, 578 F.2d 216, 217 (8th Cir. 1978) (no constitutional right to have a layperson represent a criminal). Accordingly, this claim is without merit, as counsel for Stanko was not ineffective in this regard.

### *5. Change of venue*

Stanko first raised this venue issue before the magistrate judge, wherein Stanko alleged he was born in Wyoming, had a Montana driver's license, and the accused must be tried where the crime occurred. Filing No. 8. The magistrate judge determined that the

claim had no merit, as there is only one district in Nebraska. Filing No. 10 at 1. Stanko then filed a motion for change of venue with this court. Filing No. 20. He wanted this court to try him in the County Court of Dawes County, as he alleged it is unconstitutional to hold court and try him outside of his environment with alien jurors from an urban population who are not his peers or from his division. *Id*. at 1. At that time Stanko argued that Nebraska is divided into twelve districts, and he had a right to a trial in his district, Sheridan County, District No. 12. *Id*. at 2. Stanko presented these same arguments in his plea for abatement. Filing No. 23 at 7. He then asked to change the venue to Sheridan County where the crime occurred; or in Chadron, Nebraska, or in North Platte, Nebraska. Filing No. 40. He further demanded that his jury be drawn from his peers, that "properly mirror the social and cultural values known to the regional geography of Sheridan County, Nebraska. . . . This jury must not exclude persons previously convicted of crimes other than for cause shown." Filing No. 40, at 1; Filing No. 42, brief in support; Filing No. 45, affidavit. In particular, Stanko argued that rural dwellers are more tolerant of those who own and possess firearms and less trusting of government. Filing No. 42, at 2-3. He also requested that the jury questionnaire be rewritten to include convicted felons and that questions regarding criminal history be eliminated. *Id*. at 6. Stanko again requested a jury in the county where his cause of action arose. See Filing No. 66 (stricken in Filing No. 71, and reinstated in Filing No. 80); and again in Filing No. 83; and again in his petition to dismiss, Filing Nos. 93 and 94; and again in his petition for writ of mandamus, Filing No. 96; and again in his petition to dismiss for failure to comply with 28 U.S.C. § 1867 and the unconstitutional plan for jury selection in Nebraska and motion to stay, Filing Nos. 207 and 208, Filing No. 209; and again in his motion for jurors to be selected from the North Platte

wheel, Filing No. 210; and again in Filing No. 241; and again in his § 2255 action, Filing No. 335. The court once again denied the motion for venue as Stanko is not entitled to a rural/European/White/Nordic ancestry jury of his peers. Filing No. 106 at 4-5.[4]

Stanko alleges that he had ineffective assistance of counsel because his counsel failed to argue on direct appeal that Stanko "was forced to defend this case in the wrong venue in violation of his Fifth and Sixth Amendment rights and his statutory right (28 U.S.C. § 107 in conjunction with Rule 18) of being indicted, prosecuted and tried in the proper venue." Filing No. 335, p. 84. This court denied motions by Stanko several times during the pending case. First, this court stated with regard to Filing No. 40:

> Defendant asks this court to change the venue of the case to a more hospitable location, namely, Sheridan County, Nebraska, where the crime occurred; Chadron, Nebraska; or North Platte. He offers no substantiation for this request. Defendant also requests that the jury mirror the social and cultural values of Sheridan County and the jury must not exclude persons previously convicted of crimes other than for cause shown. The court has examined this case and finds that venue is most appropriate in Omaha. The court further determines that the jury and juror pool will be selected as is appropriate pursuant to the Nebraska Local Rules and the United States Constitution. Accordingly, defendant's motion is denied.

Filing No. 47, p. 5. This court reiterated its position in Filing No. 106:

> Defendant moves this court to change venue from Omaha to western Nebraska. He argues that he is entitled to a jury of his peers pursuant to the United States Constitution. He argues that he lives in western Nebraska where his peers consist of members of his racial and ethnic background. He contends that Nebraska is composed of twelve judicial districts and he cannot be tried in the Omaha district. Defendant is incorrect in this regard. There exists only one district in federal court in Nebraska, and that district is

---

[4]In Stanko's Social Security fraud case, *United States v. Stanko*, 06cr50, he filed numerous venue motions: petition to dismiss, Filing No. 7; petition to dismiss, Filing No. 9; motion to change trial, Filing No. 14; motion to dismiss, Filing No. 15; writ of habeas corpus, Filing No. 20; petition to dismiss, Filing No. 22; motion to change venue, Filing No. 79; motion to dismiss, Filing No. 211; motion for judgment of acquittal, Filing No. 236; motion to unseal, Filing No. 239; motions to acquit, Filing No. 240, Filing No. 241, and Filing No. 242; renewed motion to acquit, Filing No. 246. In both the gun and the social security fraud cases, Stanko's motions to change venue were numerous and the arguments changed each time the court ruled on a motion.

10

> the entire state of Nebraska. 28 U.S.C. § 107. There are several venues for trying the case, but there is only one district.
>
> As to which venue within the district of Nebraska is more appropriate, defendant contends that it should be in western Nebraska, and in particular the County Courthouse of Dawes County. Defendant argues that it costs him more to come to Omaha for his case. A case must be prosecuted in the district where it occurs and where the court convenes. 18 U.S.C. § 3232; 28 U.S.C. § 1861; Fed. R. Crim. P. 18. When the court determines what venue is most applicable, it must look at such factors as the convenience of the parties, witnesses, location of counsel, interests of justice, and where the event occurred. Fed. R. Crim. P. 18. There is no law, however, which states that a "jury of his peers" means persons exclusively of his racial and ethnic background. See *United States v. Baker,* 98 F.3d 330 (8th Cir. 1996). The defendant argues that he lives in western Nebraska and a number of his witnesses are from western Nebraska. The government contends that it has witnesses in both western Nebraska and in Omaha. It further argues that a number of ATF agents will be required to travel to western Nebraska if the case is moved and that this will cause great inconvenience to the ATF office. Counsel for the government is likewise in Omaha. The government requests this case be tried in Omaha, or in the alternative, in Lincoln, Nebraska. The court has carefully reviewed the requests of both parties and has determined that the interests of justice dictate that the trial shall remain in Omaha. Filing No. 66. Likewise, defendant's motion for a hearing, Filing No. 87, will be denied. The government's motion, Filing No. 99, is granted.

Filing No. 106, pp. 2-3.[5]

At that time Stanko's primary argument concerned his belief that he should be tried in a location comprised of his basic white background. This court found that factor not a consideration in a motion to change venue. Stanko also argued that jurors with a rural background would more likely mirror his beliefs about issues dealing with guns. The court notes for the record, and takes judicial notice of this fact, that the Omaha wheel used to draw jurors contains a substantial number of rural counties. Further, as can been seen by the court's previous rulings, the court met with ATF to discuss the potential of having a trial

---

[5] The court also notes that it carefully reviewed all of Stanko's requests for witnesses in this case and, in fact, the court ordered the government to pay for the costs associated with one witness's attendance at trial.

of this type in North Platte, Nebraska. The court determined that the safety of staff and court personnel was paramount and, given Stanko's history, trial could not be safely conducted in North Platte.[6] This court believes the logistics of trying a criminal case in North Platte while the defendant is in custody are nearly insurmountable.

### 6. *Grand jury records and composition*

Stanko contends he is entitled to (1) grand jury records, and (2) the testimony given to the grand jury. He first asked for grand jury materials relating to the "impanelment and composition" because the grand jury was drawn in his case disproportionately from the

---

[6]Judge Richard Kopf recently addressed this issue:

"When one searches for Stanko's name in the law books or the court dockets, one quickly finds that he has been involved in numerous civil and criminal matters in various state and federal courts over the last twenty five years. *See, e.g., United States v. Stanko,* 528 F.3d 581 (8th Cir. 2008) (reversing conviction for providing a false Social Security number and remanding for reconsideration of Stanko's change of venue motion seeking trial in North Platte); *United States v. Stanko*, 491 F.3d 408 (8th Cir. 2007) (affirming conviction for being a prohibited person in possession of a firearm and ammunition); *Stanko v. Acton*, 296 Mont. 558, 8 P.3d 123 (Mont.1999) (Table) (affirming dismissal of Stanko's pro se civil suit against warden of Montana Women's Prison and others that claimed, among other things, that Stanko had been ordained as a religious minister in the Church of the Creator and the defendants wrongly terminated Stanko's visiting privileges; the defendants denied his visiting privileges due to Stanko's criminal record, the belief that he would have a detrimental effect on the orderly operation of the institution, and because of the racially hateful nature of materials he had sent to inmates)." *Stanko v. Patton*, 06cv290 (U.S. Dist. Neb., July 24, 2008), Filing No. 115 at 2-3

"If this Memorandum and Order does nothing else, it should establish that Chief Judge Bataillon's concerns were well-founded when he decided not to move Stanko's criminal cases to North Platte. Having been a judge on this Court since 1987, and having practiced law in the North Platte area for 13 years before that, I know that federal criminal trials in North Platte present serious security issues. Situated on the third floor of an old post office, the North Platte facility is far less secure than the courthouses in Lincoln or Omaha. In fact, to the best of my recollection, I am the only federal judge in the last 20 years to have tried a felony criminal case in North Platte, and that case involved a defendant who was not in custody. Respectfully, the idea that Rudy Stanko's criminal cases should have been tried in North Platte, particularly while he was in custody, strikes me as very dangerous." *Id.*, 2-3 n.2.

"According to a well-regarded legal group that tracks extremists, Stanko was "briefly chosen to lead the neo-Nazi Church of the Creator in 1990 . . . ." Southern Poverty Law Center, Intelligence Report, The Blotter, Updates on Extremism and the Law, (Fall 2007) available at http://www.splcenter.org/intel/intelreport/article.jsp?aid=827 (commenting on the Eighth Circuit's decision affirming Stanko's weapons conviction) (last accessed July 15, 2008)." *Id.* at 3 n.4.

12

eastern counties of Nebraska. Filing No. 21 at 2. With regard to the composition, Stanko argued that jurors from the eastern, urban part of the state are not his peers. *Id.* at 3. Stanko presented these same arguments in his plea for abatement. Filing No. 23 at 7-8. The government then filed a superseding indictment, Filing No. 220, and Stanko again moved to inspect the makeup of the grand jury and challenged by the grand and jury petit selection. Filing No. 231. He filed another motion to dismiss for jury selection. Filing No. 241. Pursuant to Stanko's fraud conviction reversal by the Eighth Circuit, the Nebraska Clerk of Court provided access to records for grand jury and petit jury procedures and selection to Stanko. Prior to the Eighth Circuit ruling in the fraud case, the Clerk of Court provided Stanko with a copy of the jury and grand jury selection plans as set forth below. In addition, following the Eighth Circuit ruling, the Clerk of Court via the Eighth Circuit provided Stanko with all plans between the years of 1997 and 2008, including the modified plans for jury selection for April 25, 2008; May 5, 2006; May 5, 2003; July 31, 2001; and September 10, 1997. The Clerk of Court has likewise made the grand jury reports, records and questionnaires available to counsel for both parties.

The Modified Plan for Random Jury Selection for the United States District Court for the District of Nebraska as approved by the Eighth Circuit Judicial Council on June 4, 2003, states:

> 1. It is the policy . . . shall have the right to grand and petit juries selected at random from a fair cross section of the community wherein the court convenes.

*Id.* at 1.

> 3. Pursuant to 28 U.S.C. § 107, Nebraska constitutes one judicial district, and court is held at Lincoln, North Platte and Omaha. For purposes of jury selection, a separate divisional master wheel shall be maintained for each

> place of holding court.  This Plan applies to the three divisional master wheels, which comprise the master wheel for the district.

*Id.* at 1-2.

> 6. (b) Such random selections of names from the source list for inclusion in the master wheels by data computer personnel must ensure that each county within the jury division is substantially proportionally represented in relation to the number of registered votes in accordance with 28 U.S.C. § 1863(b)(3).  The selection of names from the source list and the master wheels must also ensure that the mathematical odds of any single name being picked are substantially equal.

*Id.* at 3.

> 7. Master Wheels.  (a)  A master wheel . . . shall be maintained for each of the three places of holding court in the district: namely, Omaha, Lincoln, and North Platte.  Names from the following counties, randomly selected as provided in Paragraph 6 above, shall be placed in the master wheel . . . [for Omaha, Lincoln, and North Platte].

*Id.* at 3-4.

> 7.  (a) The minimum number of names to be placed initially in the master wheel for Omaha shall be at least ten thousand; for Lincoln at least five thousand; and for North Platte at least two thousand.

*Id.* at 4.

> 8. Pursuant to 28 U.S.C. § 1878, the court . . . shall publicly draw at random from the master jury wheels the names of as many persons as may be required for jury service.

*Id.* at 5.

> 11. Grand Juries.  When grand juries are required, the clerk shall order the drawing from the master wheel for each place of holding court a pro rata share of the total number of grand jurors needed to be qualified and summoned. . . .   Grand juries shall be empaneled only at Omaha unless otherwise ordered by the court, but they shall be drawn from the entire district.

*Id.* at 6-7.

> 12. (b)(5) A person is not qualified to serve as a juror if he/she "has a charge pending against him/her for the commission of, or has been convicted in a

> state or federal court of record of, a crime punishable by imprisonment for more than one year and his or her civil rights have not been restored."
>
> 13. (b) The Office of the Clerk of Court shall retain, and when requested, provide public access to the following documents: the court's 'Modified Plan for Random Jury Selection'; a copy of the court's authorization and written instructions which carries out the building of master wheels, along with a certificate of compliance. . . .

*Id.* at 9-10.

> 14. Disclosure of Names Drawn from Master Wheels. (b) The names of grand jurors drawn from the master wheels shall not be disclosed to anyone other than the United States Attorney, except upon specific order of the court.

*Id.* at 10.

> 15. Nondisclosure of Records. The contents of records and papers used in connection with the jury selection process shall not be disclosed except as provided in this Plan and by the provisions of 28 U.S.C. § 1867(f).

*Id.* at 10.

Stanko argues ineffective counsel because his attorney failed to argue on appeal that the grand jury panel that indicted him had no juror from the North Platte panel. Stanko contends that this is both a Fifth and Sixth Amendment violation. The Eighth Circuit has stated:

> There is no statutory or constitutional right to a jury drawn either from the entire judicial district or from the division in which the offense occurred. E.g., *United States v. Balistrieri,* 778 F.2d 1226, 1229 (7th Cir.1985) (jury need not be selected from division in which crime committed), cert. denied, 477 U.S. 908, 106 S. Ct. 3284, 91 L. Ed.2d 573 (1986); *Zicarelli v. Dietz,* 633 F.2d 312, 317-18 (3d Cir.1980) (no constitutional right to jury chosen from division where offense was committed or from entire district which includes that division), cert. denied, 449 U.S. 1083, 101 S. Ct. 868, 66 L. Ed.2d 807 (1981).

*United States v. Baker*, 98 F.3d 330, 337 (8th Cir. 1996). The court also held:

> The Sixth Amendment to the United States Constitution requires that a trial be held in the state and district where the crime was committed. However,

15

> a defendant does not have a right to be tried in a particular division. *United States v. Davis,* 785 F.2d 610, 616 (8th Cir.1986). Wipf attempts to distinguish the law of this circuit, arguing that while the trial location is within the discretion of the district court, a defendant has a right to have jurors summoned from a geographic boundary of a specific judicial division. We refuse to create such a distinction. *The Sixth Amendment does not require jurors to be summoned from a particular division.* (Emphasis added.)

*United States v. Wipf,* 397 F.3d 677, 686 (8th Cir. 2005). The United States Supreme Court has:

> emphasized that in holding that petit juries must be drawn from a source fairly representative of the community we impose no requirement that petit juries actually chosen must mirror the community and reflect the various distinctive groups in the population. Defendants are not entitled to a jury of any particular composition.

*Holland v. Illinois,* 493 U.S. 474, 483 (1990) (citation omitted).

The Clerk of Court made the grand jury selection pursuant to the Modified Plan for Random Jury Selection which the Eighth Circuit has approved. The Clerk of Court pulled a pro rata share of jurors from all three wheels: Omaha, Lincoln, and North Platte. All counties in the State of Nebraska are included on these wheels. The Clerk of Court then caused summons for service to issue as to each prospective grand juror. All eligible, qualified grand jurors respond and come to Omaha. The court held numerous times throughout the course of Mr. Stanko's filings that he is not entitled to a petit or grand jury of his peers from only the Western Division of Nebraska.[7] See 28 U.S.C. § 1867(f). The Clerk of Court followed the selection plan, and Stanko does not argue otherwise. Stanko argues only that the Plan is invalid, not that the Clerk of Court failed to follow the Plan. Because Stanko filed no motion containing a sworn statement, that if true, would constitute

---

[7]Stanko raised these same issues regarding composition of the grand jury in his Social Security fraud case, *United States v. Stanko*, 06CR50, Filing No. 8; petition to challenge, Filing No. 13; and motion to inspect, Filing No. 204.

16

a violation of 28 U.S.C. § 1867, no evidence exists to support his argument. See 28 U.S.C. § 1867(d)[8]. This Plan for grand jury selection includes persons from the entire State of Nebraska and the plan is approved by the Eighth Circuit. Accordingly, the court finds Stanko's claim that counsel failed to perform effectively lacks merit.

Second, Stanko also argued that this court should give him access to grand jury materials of representations and testimony made to both grand juries in his two cases by law enforcement, witnesses and prosecutors regarding his felon status and the bank fraud conviction. Filing No. 89.[9] This court determined that grand jury materials are confidential in general, *Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211, 218-19 (1979), and second, defendant must show a particularized need before the court will disclose this information. *United States v. Broyles*, 37 F.3d 1314, 1318 (8th Cir, 1994). Filing No. 47, at 3. This court determined that what Stanko really attempted to challenge was the sufficiency of the government's case, something he could do at trial. *Id.* Further, this court determined that Stanko requested review of the grand jury materials as they related to a purely legal issue–whether Stanko was a felon pursuant to 18 U.S.C. § 922(g) for a previous violation of the Federal Meat Inspection Act–and therefore, the grand jury transcripts were not relevant to that issue. Filing No. 106 at 3-4. Again, Stanko asked for reconsideration of this court's rulings. Filing No. 120.

Stanko has made no showing that the outcome of his trial would have been any different or that he has been prejudiced because the grand jury did not include a person from the North Platte area. Second, this court and ultimately the Eighth Circuit found the

---

[8]This analysis applies to both the petit and grand jury selections.

17

meat inspection act conviction, as a matter of law, applicable in this case. Such a finding made Stanko's request for specific grand jury information regarding witnesses and testimony in this regard irrelevant. Accordingly, the court finds that counsel's alleged mistake did not cause prejudice to Mr. Stanko and would not have changed the outcome of the case.

### *7. Sentence*

Stanko argues his counsel is ineffective for failing to raise issues regarding his sentence imposed on him by this court. The court has reviewed both of these arguments and find they lack merit. The court imposed an appropriate sentence given Mr. Stanko's criminal history, intimidation of witnesses,[10] the quantity of firearms, and lack of acceptance of responsibility. Thus, any claim of ineffective assistance must fail.

### *8. Jury Costs*

This court imposed jury costs on Mr. Stanko. The government concedes that had counsel appealed this issue, the Eighth Circuit might have reversed the award of jury costs. As a result of the government's agreement, this court will reverse the award of jury costs and find counsel ineffective for failing to raise this issue. *See United States v. Mink*, 476 F.3d 558, 564 (8th Cir. 2007) (taxation of jury costs by district court after plea reversed, as §§ 1918 and 1920 do not permit imposition of jury costs against a criminal defendant); 28 U.S.C. § 1918(a) ("Costs shall be included in any judgment, order, or decree rendered against any person for the violation of an Act of Congress in which a civil fine or forfeiture of property is provided for. (b) Whenever any conviction for any offense not capital is

---

[10]For example, on December 29, 2005, the court specifically amended the conditions of release to state that Stanko could not have contact with witnesses, and particularly with Brenda Berg, because of the issue of intimidation.

18

obtained in a district court, the court may order that the defendant pay the costs of prosecution"); 28 U.S.C. § 1920 (court may tax as costs clerk and marshal fees; transcript fees; printing and witnesses; copies; docket fees, and fees for experts and interpreters); *see also* NeCrimR 31.2 ("'Costs' as used in this rule do not include attorney's fees.").

THEREFORE, IT IS HEREBY ORDERED:

1. Defendant's motion for a First Amendment petition or a third-party counterclaim, Filing No. 383, and motion to determine a release date, Filing No. 384, are denied and dismissed as this court has no jurisdiction to review the matter.

2. The miscellaneous motions set forth in Filing Nos. 341, 346, 349, 379 and 385 are denied as moot.

3. Defendant's motions for release and to review his sentence, Filing No. 357 and Filing No. 366, are denied.

4. Defendant's motion to vacate, Filing No. 335, is denied in part and granted only as to the assessment of jury costs as set forth herein.

5. Defendant's motion for information regarding the jury records, Filing No. 352, is denied as moot, as defendant has received the requested information as set forth herein.

Dated this 23rd day of June, 2009.

BY THE COURT:

s/ Joseph F. Bataillon
Chief District Judge

19